UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER GRAGORY
WINOWIECKI,

    Petitioner,

Case No. 16-14270
Honorable Laurie J. Michelson

v.

LORI GIDLEY,

    Respondent.

---

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

---

A Michigan state-court jury convicted Christopher Winowiecki of four counts of criminal sexual conduct in 2013. In time, Winowiecki filed a petition for a writ of habeas corpus in federal court. The sole issue now before the Court is whether the state appellate court reasonably found that the prosecutor's comments at trial did not violate Winowiecki's constitutional rights. The Court's answer is "yes."

So the Court denies the petition and declines to issue a certificate of appealability.

**I.**

Winowiecki's convictions related to sexual conduct with his 15-year-old daughter, "K.W." (ECF No. 11-5, PageID.360.) During the relevant time period, K.W. lived in Petoskey with her father, her siblings, and her father's fiancée (Laura Leonard). (ECF No. 11-5, PageID.358–359.) Winowiecki and K.W.'s mother had divorced when K.W. was young. (ECF No. 11-5, PageID.359.) Winowiecki retained custody of K.W., but K.W. visited regularly with her mother. (ECF No. 11-5, PageID.359–360.)

At trial K.W. gave graphic testimony regarding three times in 2012 when she alleged that her father sexually assaulted her. First, she testified that Winowiecki grabbed her breasts and inserted his finger into her vagina while they were alone on a couch one night; he then pulled down her pants and tried to have vaginal intercourse with her, but she resisted. (ECF No. 11-5, PageID.362–363.) On a second occasion on the couch, as K.W. was starting to fall asleep, Winowiecki again digitally penetrated her and unsuccessfully attempted to have vaginal intercourse, she said. (ECF No. 11-5, PageID.363–365.) Finally, K.W. recalled one morning before school when Winowiecki went to her bed, penetrated her vagina with his finger for a few minutes, and attempted to have vaginal intercourse with her. (ECF No. 11-5, PageID.365.) K.W. further testified that Winowiecki sometimes had forced her to rub his penis. (ECF No. 11-5, PageID.366.) On other occasions, she said, her father would enter the bathroom and remain there while she was showering. (ECF No. 11-5, PageID.370.)

K.W. confided in some friends, who recommended that she talk to a school counselor. (ECF No. 11-5, PageID.367.) K.W. spoke with her counselor, who contacted the school principal. (ECF No. 11-5, PageID.331.) After an investigator from Children's Protective Services interviewed K.W., that investigator and a police detective questioned Winowiecki. (ECF No. 11-6, PageID.452, 458.) As the detective testified, Winowiecki gave a "pretty strong" denial that he had engaged in sexual intercourse with his daughter. (ECF No. 11-6, PageID.501.) But Winowiecki's "nervousness increased" during the interview, said the detective, and his denials "became progressively weaker" such that he was "meek and mild-mannered" when he later said he had never inappropriately touched his daughter. (ECF No. 11-6, PageID.502.) The police arrested Winowiecki, and he was arraigned on four counts of criminal sexual conduct. (ECF No. 11-1, PageID.60.)

At trial, Winowiecki testified in his own defense and denied his daughter's allegations (ECF No. 11-6, PageID.643.) He said it was not unusual for K.W. to "cuddle with" him on the couch, but he stated that his daughter's version of events "absolutely [did] not" happen. (ECF No. 11-6, PageID.640, 643.) Winowiecki also testified that he had never gone into the bathroom while K.W. was showering. (ECF No. 11-6, PageID.645.) Nor, he said, had he ever had physical contact with her in her bed "[o]ther than rubbing her back to maybe get her up." (*Id.*) His fiancée, Laura Leonard, also testified for the defense that she had no reason to believe Winowiecki had done anything inappropriate to K.W. (ECF No. 11-6, PageID.585–586.).

A jury convicted Winowiecki of two counts of first-degree criminal sexual conduct, one count of second-degree criminal sexual conduct, and one count of attempted first-degree criminal sexual conduct. (ECF No. 11-8.) Winowiecki was sentenced to concurrent terms of 7 to 25 years' imprisonment for each of the first two counts, 47 to 270 months' imprisonment for the third count, and 17 to 90 months' imprisonment for the final count. (*Id.*)

Winowiecki filed an appeal of right in the Michigan Court of Appeals raising two claims through counsel and a third claim in a pro per supplemental brief: (1) the prosecutor's opening and closing statements violated his right to present a defense; (2) the incorrect scoring of an offense variable violated due process; and (3) his counsel was ineffective. The Michigan Court of Appeals affirmed the convictions. *People v. Winowiecki*, No. 317821, 2015 WL 340266 (Mich. Ct. App. Jan. 27, 2015). After that decision, Winowiecki filed an application for leave to appeal in the Michigan Supreme Court raising one prior claim—regarding prosecutorial misconduct—and one new speedy-trial claim. The Michigan Supreme Court denied leave to appeal. *People v. Winowiecki*, 868 N.W.2d 903 (Mich. 2015).

Winowiecki, through counsel, then filed this habeas petition, raising the same three claims raised in the Michigan Court of Appeals and an additional ineffective-assistance-of-counsel claim. (ECF No. 1.) Warden Lori Gidley moved to dismiss the petition, arguing that Winowiecki failed to exhaust three of those four claims. (ECF No. 4.) Ultimately, Winowiecki conceded that three claims were unexhausted and asked the Court to stay rather than dismiss the petition so that he could exhaust his claims. (ECF No. 5.) This Court stayed the proceeding because a dismissal would have jeopardized the timeliness of a future petition. *See Winowiecki v. Gidley*, No. 16-14270, 2018 WL 1316166, at *1 (E.D. Mich. Mar. 14, 2018). The Court conditioned the stay upon Winowiecki promptly filing a motion for relief from judgment in state court. *See id.* at *3. Approximately eight months later, with no activity appearing on the state-court docket, the Court issued an Order requiring Petitioner to show cause why his case should not be reopened and adjudicated on the merits. (ECF No. 7.) In response, Winowiecki withdrew the three unexhausted claims. (ECF No. 8.)

So the Court will review Winowiecki's sole exhausted claim of prosecutorial misconduct. For the reasons stated below, the Court concludes that Winowiecki is not entitled to relief.

## II.

A habeas petition under 28 U.S.C. § 2254 is governed by the heightened standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). To obtain relief, habeas petitioners who challenge "a matter adjudicated on the merits in State court [must] show that the relevant state court decision (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (internal quotation marks omitted) (quoting 28 U.S.C. § 2254(d)). The focus of

this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Also, a state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

**III.**

Winowiecki argues that the prosecutor committed misconduct by commenting on the credibility of certain witnesses, misstating the burden of proof, and suggesting that Winowiecki had a motive to lie in order to avoid conviction. Because defense counsel failed to lodge a contemporaneous objection during trial, the Michigan Court of Appeals reviewed this prosecutorial misconduct claim under a plain-error standard. *Winowiecki*, 2015 WL 340266, at *1. While Gidley urges that this claim is procedurally defaulted, the Court will bypass the procedural default analysis because it is more efficient to proceed directly to the merits of the claim. *See Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003).

AEDPA's deferential standard of review applies to a state court's plain-error analysis of a defaulted claim. *Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).

A prosecutor's improper comments violate a criminal defendant's constitutional rights only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct entails much more than conduct that is "undesirable or even universally condemned." *Id.* (citation omitted). To constitute a due process violation, the conduct must have been "so egregious so as to render the entire trial fundamentally unfair." *Gumm v. Mitchell*, 775 F.3d 345, 380 (6th Cir. 2014) (quoting *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979)).

The *Darden* standard "is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (alteration in original) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "That leeway increases in assessing a state court's ruling under AEDPA" because federal courts "cannot set aside a state court's conclusion on a federal prosecutorial-misconduct claim unless a petitioner cites . . . other Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable." *Stewart,* 867 F.3d at 638–39 (quoting *Trimble v. Bobby*, 804 F.3d 767, 783 (6th Cir. 2015)). *Darden* requires that the defendant clear a "high bar." *See id.* at 639.

**A.**

First, Winowiecki challenges one portion of the State's opening statement. Referring to K.W., the prosecutor said: "[T]here will be no valid reason on this record that you will be able to come up with as to why she could make up such egregious acts against her father. You will find her to be a sincere, honest, likeable, and innocent child." (ECF No. 11-5, PageID.311–312.) He continued: "On the other hand, you will find that the Defendant will have a very strong motive to deny these charges. As you know, it's abhorrent, deviant, unnatural conduct that is extremely

6

embarrassing for anyone to admit. As well as having criminal ramifications if you do admit it." (ECF No. 11-5, PageID.312.) Although defense counsel did not contemporaneously object, the trial judge at that point asked counsel to approach the bench. (*Id.*) He admonished the prosecutor that he was giving "unadulterated argument" and told him to "[c]onfine [him]self to an opening statement." (*Id.*)

On review, the Michigan Court of Appeals acknowledged that the comments were "technically not a proper presentation or statement given the purpose of opening arguments." *Winowiecki*, 2015 WL 340266, at *4. Nevertheless, the appellate court found that Winowiecki's substantial rights were not violated because the trial court interrupted the prosecutor and the prosecutor did not repeat the improper argument. *See id.*

The state court's decision was not contrary to, or an unreasonable application of, clearly established federal law. The trial court acted quickly to stop the prosecutor's improper argument and admonished the prosecutor to refrain from any more similar statements. The remainder of the government's opening statement focused on the anticipated testimony and provided the jurors a roadmap for the case. The trial court instructed the jury that the lawyer's statements were not evidence. (ECF No. 11-7, PageID.747.) And the isolated portion of the opening statement—while argumentative—was a relatively brief remark that did not render the entire trial fundamentally unfair whether or not it was improper. *See, e.g.*, *United States v. Carter*, 236 F.3d 777, 788 (6th Cir. 2001) ("If a prosecutor's comments were simply isolated remarks made during the course of a long trial, then the error caused by such misconduct may be harmless."). And Winowiecki has not cited any Supreme Court precedent in this context that indicates otherwise.

**B.**

Additionally, Winowiecki objects to three portions of the government's closing argument. First, he argues that the prosecutor improperly shifted the burden of proof by telling the jury: "In every criminal trial, it's the defense attorney's job to try to create some reasonable doubt." (ECF No. 11-7, PageID.702.) Second, the prosecutor commented that the jury should consider Winowiecki's desire to avoid conviction when assessing whether the defendant's testimony was biased or credible. In particular, he stated: "Not only is it the most embarrassing and humiliating thing to admit, molesting your daughter, but also—and losing your family, the consequences—but also, one thing even more precious than all of that, his very freedom's at stake." (ECF No. 11-7, PageID.715.) And he rhetorically asked the jury, "[W]ho has a stronger motive to lie, [K.W.], who came forward with these allegations, or the Defendant to deny them?" (ECF No. 11-7, PageID.716.) Third, when referring to the credibility of two witnesses for the government, the prosecutor said: "There's no reason to disbelieve them. They have no motive to lie. The defendant has every motive to minimize and lie." (ECF No. 11-7, PageID.740.)

The Michigan Court of Appeals held that the closing statement did not constitute error requiring reversal. *Winowiecki*, 2015 WL 340266, at *2. The court held (1) that the prosecutor did not shift the burden of proof, (2) that the prosecutor's comments about Winowiecki's credibility were not misconduct, and (3) the prosecutor did not improperly vouch for the credibility of witnesses. *See id.* at *2–3.

The Court concludes that Winowiecki has not surmounted the "high bar" necessary for a prosecutorial-misconduct claim based on the closing statement.

First, regarding the burden of proof, the state appellate court held: "When viewed in context, the prosecutor's statements pertaining to defense counsel's creation of reasonable doubt

did not comprise an improper shifting of the burden, but rather a comment on the evidence and the arguments of the defense pertaining to the credibility of witnesses." *Id.* at *3. Further, a "prosecutor is permitted to fairly respond to an issue raised by a defendant." *Id.* (quoting *People v. Fields*, 538 N.W.2d 356, 365 (Mich. 1995)). In this case, Winowiecki testified that his daughter had fabricated her allegation that he had inappropriate sexual contact with her on the couch and in her bed. The prosecutor's statement that the defense had "tr[ied] to create some reasonable doubt" was a response to the defense's fabrication argument. And the trial judge correctly instructed the jury on the presumption of innocence, burden of proof, and reasonable doubt. (ECF No. 11-7, PageID.746–747.) Winowiecki fails to explain how the Michigan Court of Appeals' decision that, considered in context, the prosecutor did not shift the burden of proof is not contrary to, or an unreasonable application of, clearly established federal law.

Regarding the comments about the credibility of Winowiecki and two other witnesses, the Michigan Court of Appeals reasoned: "The prosecutor's comments regarding defendant's truthfulness pertained to discrepancies and inconsistencies concerning defendant's testimony. As such, the prosecutor's statements pertaining to defendant's motivations did not constitute misconduct. A prosecutor is permitted to 'argue from the evidence and its reasonable inferences in support of a witness's credibility.'" *Winowiecki*, 2015 WL 340266, at *3 (quoting *People v. Bennett*, 802 N.W.2d 627, 636 (Mich. Ct. App. 2010)).

The Michigan Court of Appeals' decision that the prosecutor did not improperly vouch for the credibility of witnesses or question Winowiecki's credibility is also not contrary to, or an unreasonable application of, clearly established federal law. "Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility." *United States v. Acosta*, 924 F.3d 288, 299 (6th Cir. 2019) (quoting *United States v.*

9

*Francis*, 170 F.3d 546, 550 (6th Cir. 1999)). "Generally, improper vouching involves either blunt comments or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *Francis*, 170 F.3d at 550 (internal citations omitted).

And a prosecutor may attack the defendant's credibility "to the same extent as any other witness." *Id.* at 551. For instance, the prosecutor may assert that a defendant is lying by "emphasizing discrepancies between the evidence and that defendant's testimony." *Id.*; *see also West v. Bell,* 550 F.3d 542, 565 (6th Cir. 2008) ("A prosecutor should not give his own opinion as to the credibility of [a] witness. . . . Nevertheless, this does not mean that the prosecution cannot attack the defendant's credibility or even assert that the defendant is lying."); *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996) ("Where there is conflicting testimony, it may be reasonable to infer, and accordingly to argue, that one of the two sides is lying.").

Here, the prosecutor did not improperly vouch for the credibility of the witnesses. The prosecutor did not make "blunt comments" or imply that he had "special knowledge of facts not in front of the jury." *See Francis*, 170 F.3d at 550. Rather, he acknowledged the competing narratives and rhetorically asked the jury about who had a "stronger motive to lie." The prosecutor explored witnesses' motives for testifying, highlighted weaknesses in the defense, and argued reasonable inferences from the evidence. The prosecutor said, for instance, that there was "no reason to disbelieve" the investigator or the detective, who testified for the government. In sum, these statements did not amount to improper vouching. *See Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008) ("Prosecutors can argue the record, highlight any inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence.").

Overall, the government's statements did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181. The state appellate court concluded that no reversible prosecutorial misconduct occurred—and Winowiecki has not identified any precedent to the contrary. So Winowiecki is not entitled to habeas relief.

**IV.**

For the reasons given, the Court DENIES Winowiecki's petition for writ of habeas corpus. (ECF No. 1.) Because no reasonable jurist would debate the Court's ruling, or debate whether the petition states a "valid claim of a denial of a constitutional right[,]" the Court DENIES a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). If Winowiecki chooses to appeal, he may proceed in forma pauperis. *See* 28 U.S.C. § 1915(a)(3).

IT IS SO ORDERED.

Dated: March 30, 2020

                                              s/Laurie J. Michelson
                                              LAURIE J. MICHELSON
                                              UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 30, 2020.

                                              s/Erica Karhoff
                                              Case Manager to the
                                              Honorable Laurie J. Michelson